```
                   UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
                          MIAMI DIVISION
                  CASE NO. 22-20389-CR-RKA


UNITED STATES OF AMERICA,      .
                               .
          Plaintiff,           . Miami, Florida
                               . August 23, 2023
     v.                        . 2:44 p.m.
                               .
JAIME SERRANO,                 .
                               .
          Defendant.           .
. . . . . . . . . . . . . . . .


                       - - - - -

     Transcript of Government's Closing Arguments had

         before the Honorable Roy K. Altman,

     United States District Judge, and a Jury.

                       - - - - -
```

Proceedings recorded by mechanical stenography, transcript produced by computer.

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(305)301-3276

APPEARANCES:

For the Government:   Abbie D. Waxman
                      Michael E. Gilfarb
                      Katherine Guthrie
                      Assistant U.S. Attorneys
                      U.S. Attorney's Office
                      99 N.E. 4th Street
                      Miami, Florida  33132

For the Defendant     Jeremy A. McLymont, Esq.
Jaime Serrano:        Jeremy A. McLymont, P.A.
                      1000 W. Cass Street
                      Tampa, Florida  33606
                            and
                      Cherly Lucien, Esq.
                      210 Lake Point Drive, #311
                      Oakland Park, Florida  33309
                            and
                      Yeslly Herrera, Esq.
                      AsiliA Law Firm
                      33 SW 2nd Avenue, Suite 1104
                      Miami, Florida  33134

Court Reporter:       Francine C. Salopek, RMR, CRR
                      Official Court Reporter
                      United States District Court
                      299 E. Broward Blvd., Room 207B
                      Fort Lauderdale, Florida 33301
                      (305)301-3276

- - - - -

CLOSING ARGUMENT - WAXMAN

1 **WEDNESDAY, AUGUST 23, 2023, 2:44 P.M.**

2 *****

3           MS. WAXMAN:  I came before you a week ago and I said:

4 This defendant paid for the flights that brought him and the

5 shooter from New York to Miami; this defendant rented the cars

6 that they used to surveil and later shoot ▓▓▓▓▓ in the

7 driveway of his home; this defendant did surveillance day in

8 and day out leading up to the night of the shooting; and this

9 defendant drove that car out of the parking lot the night of

10 the shooting.

11           When I said that to you last time, he sat here

12 presumed innocent.  When I say it to you now, I submit to you,

13 ladies and gentlemen, that over the course of this week, you

14 have heard witnesses testify, you have seen documentation that

15 proves to you that it's true.

16           Him and the shooter came down here with the intent to

17 kill, harass, intimidate, or injure ▓▓▓▓▓  They, in fact,

18 did so after surveilling him on the 22nd, 23rd, 24th, 26th, and

19 27th.  And then his conspirator, Jimenez, who was in on this

20 crime with him, walked into ▓▓▓▓ community wearing a mask,

21 gloves, holding a loaded gun, and emptied eight bullets into

22 ▓▓▓▓▓ car.

23           Now, we're going to go over the evidence.  One thing

24 that happened during this case is that evidence came in by way

25 of testimony and it came in by way of exhibits.

CLOSING ARGUMENT - WAXMAN

1   Now, you're going to get an exhibit list in the back
2   with you. Each exhibit is identified by a number or a letter,
3   and you can track it one by one. Then they have a description
4   of the exhibits. A lot of these exhibits came in when you
5   didn't even know it, because they came in by way of a business
6   record certification, right? So someone said, "This record is
7   exactly what it is supposed to be," and then it got admitted
8   into evidence.
9   You will be able to go through these exhibits one by
10  one. What I am going to show you is what these exhibits mean
11  as it relates to this defendant.
12  Fran, may I have this one, please?
13  THE COURT REPORTER: Is it the 1 or 2?
14  MS. WAXMAN: One.
15  *(Discussion had off the record between counsel)*
16  MS. WAXMAN: Judge, may I have a minute, please?
17  THE COURT: Sure.
18  *(Discussion had off the record)*
19  THE COURT: I just saw it.
20  There we go.
21  MS. WAXMAN: Okay. So now let's start with the
22  shooter.
23  *(Video playing)*
24  MS. WAXMAN: Now, ladies and gentlemen, at the top
25  right-hand corner of your screen, you see ▓▓▓▓▓▓ driving

CLOSING ARGUMENT - WAXMAN

1  home into his community just like he always does.  Remember
2  what he said to you when he took the stand as the first
3  witness.  "I followed the same routine day in and day out.  I
4  leave work, pull into my community, get out of the car, go into
5  my house to meet my wife.  We then walk to Publix together."
6  That's what he told you.
7       Now, as you watch at the top right-hand corner, you
8  see a very small Julian Jimenez come into the community.  He
9  comes in from the entrance on Southwest 117th Avenue, and he
10 walks down the sidewalk up to where ▮▮▮▮▮▮▮▮ home is.
11      Ladies and gentlemen, he walked in at just the right
12 moment, the exact time that ▮▮▮▮▮▮ was going to be pulling
13 into his home, because he knew ▮▮▮▮▮▮▮▮ routine.
14      As he walks up, he makes his way over to ▮▮▮▮▮▮▮▮
15 home -- my computer is not behaving at all.  You see the second
16 image of ▮▮▮▮▮▮ home.  This is the camera that captures
17 the driveway where ▮▮▮▮▮▮ pulled in.
18      *(Video playing)*
19      MS. WAXMAN:  I don't know why it isn't working.
20      *(Discussion had off the record between counsel)*
21      MS. WAXMAN:  You see ▮▮▮ pull into his vehicle *(sic)*,
22 and just like he told you on the stand, he's on the phone.
23 He's talking to his mortgage broker about the interest rates,
24 and that's why he didn't quite pull in.  Had he followed his
25 exact routine, the shooter would have met him and his wife

CLOSING ARGUMENT - WAXMAN

1   walking to Publix.  That's also in evidence.
2           *(Video playing)*
3           MR. GILFARB:  It's from the beginning.
4           MS. WAXMAN:  That's fine.
5           *(Video playing)*
6           MS. WAXMAN:  As he sits on his phone, Julian Jimenez
7   gets closer and closer, until actually running up and sending
8   eight bullets flying, three of them piercing ▮▮▮▮▮▮
9           *(Video playing)*
10          MS. WAXMAN:  You see Julian's gloves, you see that
11  he's wearing a mask, and you can see that he fires that gun.
12          These images are taken from the shooting videos.
13  These images show you that these are the pieces of disguise,
14  these are the things that the shooter used to cover up before
15  actually going to do the shooting.
16          Now, why did those things matter?  This map shows you
17  the exact layout of the community.  So the circle is where ▮▮▮
18  ▮▮▮▮ home is.  And on the flight path that Jimenez took, that
19  we know it was Jimenez who took it, because we heard from the
20  DNA expert, who said his DNA was on the mask and inside one of
21  the gloves as a match.  He said one in 14.6 nonillion.  And I
22  asked him, "I'm not good with numbers.  What on earth is
23  nonillion?"  He said, "Multiple earths in order to find another
24  person who would have the same DNA."
25          So, ladies and gentlemen, Julian Jimenez was the

CLOSING ARGUMENT - WAXMAN

1  shooter that night.  And as he made his flight to that waiting
2  Nissan Rogue, he travelled from ▇▇▇▇▇▇ community, and he
3  dropped his mask, his gloves, and his gun.  Go back into the
4  evidence and look at the crime scene photos.
5       Then we get to the blue Nissan Rogue, the blue Nissan
6  Rogue that we heard so much about.  That blue Nissan Rogue was
7  waiting at Rock Ridge Park.
8       That final box at Southwest 108th Lane is
9  Mr. Bhamani's home.  You heard from Mr. Bhamani.  He came in
10 here and he told you that, "My home has surveillance footage."
11 That surveillance footage faces the park, and it captures the
12 park.  And, thankfully, Miami-Dade Police Department collected
13 that video that night.
14      That is why the defendant sits here charged with these
15 three counts.
16      So let's go through the law a little bit before I go
17 through the evidence that allows you to reach your verdict of
18 guilty on all three counts.
19      In order to prove interstate stalking, we, the
20 government, have to prove that the defendant travelled in
21 interstate or foreign commerce; that the defendant did so with
22 the intent to kill, injure, harass, or intimidate ▇▇▇▇▇▇
23 and that in the course of, or as a result of, that travel, the
24 defendant engaged in conduct that put ▇▇▇▇▇▇ in reasonable
25 fear of serious bodily injury or death.

CLOSING ARGUMENT - WAXMAN

1    Then we get to the conspiracy. We have to prove that
2    two or more people agreed. It can be this defendant and
3    Jimenez. It can be this defendant, Jimenez, and other people.
4    There needs to be an illegal agreement, an illegal agreement to
5    use a firearm during that first count. He had to know of that
6    agreement, and he had to participate in that agreement.
7    Then we get to Count 3. In order to prove Count 3, we
8    have to prove to you -- and these instructions will come back
9    with you, the judge already read them to you, and you will get
10   a copy of them -- we have to prove that the defendant committed
11   the interstate stalking charged in Count 1, and that in
12   relation to that interstate stalking, he knowingly used or
13   carried a firearm.
14   There is one other instruction that is incredibly
15   important for your deliberations -- aiding and abetting. This
16   instruction reads as follows:
17       "It's possible to prove the defendant guilty of a
18       crime even without evidence that the defendant
19       personally performed every act charged. Ordinarily,
20       any act a person can do may be done by directing
21       another person" -- like in this case, Julian
22       Jimenez -- "or it may be done by acting with or under
23       the direction of others."
24   And we will get to all of those others that you heard
25   about.

1    "A defendant 'aids or abets' a person if the
2    defendant intentionally joins with the person to
3    commit a crime.  A defendant is criminally
4    responsible for the acts of another person if the
5    defendant aids and abets the other person.  A
6    defendant is also responsible if the defendant
7    willfully directs or authorizes the acts of an
8    associate."
9         Ladies and gentlemen, the government has proven to you
10  that this defendant was smart enough not to hold the gun
11  himself.  He was smart enough to have Julian Jimenez, his
12  nephew, his generational family friend, who's been in special
13  ed. classes his entire life, that is what's in evidence, he was
14  smart enough to have him be the sucker, to have him hold the
15  gun, to have him do the shooting, in hopes that he would get
16  away.
17       "But finding that the defendant is criminally
18    responsible for the acts of another person requires
19    proof that the defendant intentionally associated
20    with or participated in the crime -- not just proof
21    that the defendant was simply present at the scene of
22    a crime or knew about it.  Although the evidence of
23    'presence' or 'flight' is not alone enough to sustain
24    a conviction, such evidence coupled with other
25    evidence of guilt may provide adequate grounds for a

CLOSING ARGUMENT - WAXMAN

1       conviction."
2           Ladies and gentlemen of the jury, he did not have to
3   fire that gun to be convicted of this crime.  He did not have
4   to walk into the community and shoot ▇▇▇▇▇▇ to be convicted
5   of this crime.
6           Here's why he should be convicted of this crime.
7           Let's talk about what's not in dispute first.  Let's
8   pull everything out that you do not have to worry about,
9   because it came into evidence, and the defense did not
10  challenge it.  It's here.  It is for you to go back into the
11  jury room as fact.
12          ▇▇▇▇▇▇ was shot on August 27, 2019.  You heard him.
13  You heard him cry about the fear that he felt at the thought of
14  what could happen to his wife or his kid, who was still inside
15  of that house.  You heard him talk about as he told his wife,
16  "Close the door, they're still shooting."
17          He suffered permanent disfigurement.  You saw the
18  photographs of his scars on his body, the scars from when he
19  was shot, then later operated on to try and remove the bullets
20  that were left behind.  You have that in evidence.  That is not
21  in dispute.
22          You know that he followed the same routine.  He
23  followed that same routine, and he told you about that routine.
24  And that's going to matter because that comes back to how this
25  defendant and Jimenez knew where to find him and when to find

CLOSING ARGUMENT - WAXMAN

1  him, and how the timing worked out just right the night of his
2  shooting and then leaving from the shooting.
3          Jimenez is the shooter.  Not in dispute.  You heard
4  from a DNA analyst that says it was a match, a match on the
5  mask, a match on the gloves.  Jimenez is your shooter.
6          Now we have to get backward from that.
7          You also learned in evidence that Shifta, a name that
8  you heard so many times, Tamrat "Shifta" Mason, paid the
9  defendant $1200 immediately before booking his ticket.
10         The defendant and Jimenez flew down from New York to
11 Miami.  Also not in dispute.
12         The defendant paid for the Days Inn with his debit
13 card ending in '4818.  Not in dispute.
14         The defendant rented two vehicles from Enterprise.
15 And we will go into those vehicles and why he rented both of
16 those vehicles.  But you know he rented a white Nissan Versa,
17 and he rented that blue Nissan Rogue.
18         One of the defendant's vehicles was the blue Nissan
19 Rogue that went through the toll plaza that night.  You know
20 that because of the toll plaza records, because it captured the
21 license plate of that vehicle and because it captured the front
22 image of that vehicle.  We'll come back to that front image in
23 a minute.
24         You know that the defendant's blue Nissan Rogue went
25 through that toll five minutes after the blue Nissan Rogue left

CLOSING ARGUMENT - WAXMAN

1  the park parking lot that night. You know that because it is
2  in evidence. The toll plaza records show the time that that
3  vehicle drove through immediately after it leaving the park,
4  immediately after Jimenez emptied that gun into ████.
5      You also know -- and it is not in dispute -- that a
6  Hispanic male driving the blue Nissan Rogue that was in Rock
7  Ridge Park got out and wiped down the doors and the handles of
8  that blue Nissan Rogue.
9      What else is not in dispute? The defendant's cell
10 site records put his phone at the towers near ████ home
11 and business on the 23rd, 24th, 26th, and 27th. What a
12 coincidence. Another thing not in dispute. Jimenez's phone
13 records put him at those same towers or ones close by on those
14 very same days.
15     You also know from the evidence that Jimenez was at
16 the Mint, the apartment that Shifta stays at, that you heard
17 from Dr. Ashby, who walked in here and couldn't have gotten off
18 the stand quicker.
19     Dr. Ashby didn't want to be involved with this.
20 Dr. Ashby said that he was friends with Shifta. Shifta uses
21 his apartment at the Mint. And you know that this defendant
22 and Shifta are not only friends, Shifta helped pay to get him
23 down here, $1200, remember? They're on the phone together.
24 The $1200 gets Cash App'd to the defendant. He receives the
25 money, and then he books his flights down from New York to

CLOSING ARGUMENT - WAXMAN

1  Miami.
2         You know, because of the cell records, that this
3  defendant and the shooter never are back at the towers by
4  ▓▓▓▓ home or residence after the shooting.  Think about that
5  for a minute.  They are there on the 23rd, 24th, 26th, 27th and
6  then gone, never to come back to those towers after the
7  shooting.
8         The defendant and Jimenez are generational family
9  friends.  The defendant in his 40s, Jimenez in his 20s.  You
10 heard Jimenez's father say, "I know the defendant as 'Disco,'
11 as 'Jay,'" as all of those other names, "but I also know him as
12 'Jaimito.'"  That's how close their families are.
13        You know that Jimenez looks up to this defendant.
14 That's what Randy Carbonell came in here and told you.  And
15 that matters because that's why the defendant had him holding
16 the gun.  That's why the defendant didn't do this crime
17 himself.  He had his nephew do it.  He had his nephew do the
18 shooting thinking that he would get away.
19        Jimenez lied to the FBI about knowing the defendant.
20 He later said, "Oh, yeah, yeah, yeah, yeah."
21        But when the FBI first says, "Hey, you know Jaime
22 Serrano, you know a guy Jaime Serrano, really?"
23        "No."  That's Jimenez's answer to the FBI.
24        The defendant lied to the FBI about being in his
25 apartment the date that they came to execute a federal search